**J. P. STEVENS & CO., Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**TEXTILE WORKERS UNION OF AMER-ICA, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 14456, 14530.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1971.

Decided March 22, 1971.

Rehearing Denied Oct. 13, 1971.

W. S. Blakeney, Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on the brief), for petitioner in No. 14,456.

Patricia E. Eames, New York City, Attorney, Textile Workers Union of America, AFL–CIO (Cornelius J. Collins, Jr., New York City, on the brief), for petitioner in No. 14,530.

James P. Hendricks, Atty., N. L. R. B. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Frank H. Itkin, Atty., N. L. R. B., on the brief), for respondent.

Before BOREMAN, BRYAN and BUTZNER, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

The National Labor Relations Board's order of March 12, 1970, 181 NLRB No. 97, is adverse in two respects to J. P. Stevens & Co., Inc., an employer at Roanoke Rapids, North Carolina, and adverse in another regard to the Textile Workers Union of America, AFL–CIO, the charging party. In this action the employer and the union ask for vacation of the order insofar as it is against them, and the Board seeks entire enforcement of it. We sustain the company's contention, overrule the union's, and to this extent limit the effectuation of the Board's decision.

A violation of section 8(a) (1) and (3) of the NLRA, 29 U.S.C. § 158(a) (1) and (3), was declared by the Board against Stevens upon the finding that the company had in two ways impermissibly coerced "employees in the exercise of the rights guaranteed" them in Section 7, 29 U.S.C. § 157, to join and assist labor organization. In this, statements of management were found offensive for telling the employees that the company would learn which of them had signed membership cards by the union's

use of the cards to demand recognition. Another breach was seen in the discharge of one Arnold Ray Hux allegedly due to his union activity.

■ The Board refused a similar anti-union implication to the termination of Betty S. Allen by Stevens, although the Examiner had thought otherwise. No discussion of this ruling would be helpful, because her release was unequivocally dictated by her physical assault upon an overseer. The union's argument to the contrary was rightfully denied.

I. The statements to which objection is made were conveyed to the assembled employees by the respective superintendents on November 1, 1968 at each of the three Stevens textile plants in Roanoke Rapids. Repetition of the statements by witnesses for the Board's General Counsel was not reliable, the Examiner reported, because of their faulty memory. He preferred the recollection of the speakers themselves, which he summarized in this way:

"This version is that a situation could arise in which it would be necessary to produce signed cards in a public courtroom and the corresponding signing employees could be required to testify, and, by way of illustration, the superintendents referred to a Board proceeding involving its Statesboro plant where this procedure had taken place. In this connection, Lee [a superintendent] testified that 'we covered the dangers of signing union cards, or repercussions that can come from signing union cards,' while Crawford [a superintendent] testified that he pointed out the 'danger' of an employer [sic] signing a union card thinking it could never be seen."

The addresses were intended, the superintendents testified, to combat the inducement of employees to sign cards upon the representation that they were kept confidential. While the Examiner gave the finding on it no emphasis—relegating it to a footnote—the superintendents explained that they had also re-futed the rumor that Stevens by reason of Board and court decisions had lost the power to discharge or otherwise discipline its employees for cause. The company's aim was to correct any misunderstandings.

The restatements of what was said, and why, embrace the entire content and context of the superintendents' words. In our opinion they do not constitute misdoing. Just how the Examiner and the Board could see illegality in them is not readily perceived. At all events the conclusion seems to be a determination of law, on which we are free to rule. However, even viewed as resolution of fact it is without substantial evidential support and thus ineffectual. Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

It startles the conscience to deny an employer—no matter its historical infractions of the Act—the right to tell its employees the truth. Without conceding inappropriateness of the occasion or absence of cause here, these considerations, even if present, cannot override the stubbornness of the facts. However unbefitting, verity can never amount to illegality. Yet the Board holds just the opposite. The circumstances warranted the judgment of the employer that explanations were owing the employees and were also the entitlement of management.

■ Union cards are not confidential material. They are executed *for presentation* to the employer. The remotest possibility of an employee's understanding that his signature is a secret should be dispelled, even if the misconception exists only in idle talk. Too, confirmation of the employer's retained authority to discipline or discharge for cause is not to be disallowed. Aside from its manifest fairness, the Act acknowledges the freedom of these remarks from the brand of wrongfulness:

"(c) The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written,

printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c).

■ The superintendents' reiterations of indisputable conditions of employment were untainted by "fear, favor or affection". In their setting they were not utilized as a scourge, nor as a "threat of reprisal, or force or promise of benefit".

II. Hux's discharge on November 11, 1968 was ascribed to his refusal to report for Saturday work. The Board found that Hux, an active participant in the organizational campaign, had been discriminatorily separated for union activity. This imputation is unacceptable, given the circumstances under which he was fired.

With the company since 1959 as a size mixer, Hux well knew that his employment included Saturday assignments. Actually, his attendance record indicates that he had previously worked Saturday shifts. During the 18 months preceding his dismissal, however, with the knowledge of his supervisors he held a weekend job at a gas station. Hux testified that they had warned him that this extra engagement must not interfere with his Saturday obligations to the company. There is evidence to indicate that despite this caution, Hux had in prior instances refused Saturday work. Specifically, there was uncontradicted testimony that in June or July 1968—just 4 or 5 months prior to his discharge—he had told his employer, with some emphasis, that he would never respond to a Saturday call. He had been requested to come on Saturdays only sporadically in the preceding six or more months. This was not because of hostility to his union convictions, but for the reason that the machine operated by him was utilized on weekends only at irregular and unforeseeable intervals.

On Friday, November 8, Hux was informed of the need for him on the following day. He declined the shift, notwithstanding his supervisors' protestations that a qualified size mixer was required. Whether Hux located and offered a substitute size mixer for his Saturday assignment is not settled· in the evidence. True, he attested to it but the supervisors wholly contradicted him. Although the Examiner had found his recollection on other points untrustworthy, in this instance his testimony was credited. Accepting this appraisal, we note that Hux's overseer informed him that the basis of the overseer's insistence was that the "job was his" and he "would have to run it". We cannot fault the company for requiring a specially skilled employee to perform his particular work assignment, nor can we impute anti-union motivation to this legitimate management demand. Upon returning to the plant on Monday, Hux was terminated on account of his absence on Saturday.

■ Thus it is clear that Hux was disemployed for cause. The evidence does not provide a different inference of what actuated the expulsion.

With the company exonerated of any violation of the Act with respect to statements of management and the discharge of Hux, the Board's order will not be enforced against Stevens. It will be sustained as to the layoff of Betty S. Allen.

Order enforced in part, and set aside in part.

BUTZNER, Circuit Judge (concurring in part and dissenting in part):

I agree that the Board's refusal to order the reinstatement of Betty S. Allen is supported by substantial evidence.

I dissent from the denial of enforcement of the Board's order. The Board's finding that J. P. Stevens & Co., Inc., violated § 8(a) (1) of the Act by making coercive statements is based on the

following summary of its superintendents' speeches to employees:

"[T]hat a situation could arise in which it would be necessary to produce signed cards in a public courtroom and the corresponding signing employees could be required to testify, and, by way of illustration, the superintendents referred to a Board proceeding involving its Statesboro plant where this procedure had taken place. In this connection, Lee [a superintendent] testified that 'we covered the dangers of signing union cards, or repercussions that can come from signing union cards,' while Crawford [a superintendent] testified that he pointed out the 'danger' of an employe[e] signing a union card thinking it could never be seen."

I reject the company's defense that it was simply exercising its right to tell its employees the truth. The superintendents told only half the truth. The unspoken half is that, notwithstanding the protection afforded by law, the company has a well-deserved reputation of discharging union adherents on pretext of cause.[1]

When the whole truth is known, there can be no doubt that the speeches were coercive. Cf. N. L. R. B. v. Finesilver Mfg. Co., 400 F.2d 644, 645 (5th Cir. 1968). The Board was warranted in adopting the following finding of the trial examiner:

"For, as the employees could not but be well aware, [Stevens] was given to ferreting out the identity of union supporters and, armed with such knowledge, to discriminating against them. Bearing in mind also that two of the superintendents referred to the dangers signers would face as a result of public exposure of their identity, and that the superintendents gave the employees no counteracting assurances, the employees could reasonably, if not necessarily, regard the superintendents' remarks as a warning that card signing carried with it the possibility of both exposure to [Stevens] and retaliation by it."

Reliance on § 8(c) of the Act is misplaced. The statute on its face makes a clear distinction between the protected "expressing of any views, argument or opinion" and the unprotected "threat of reprisal." The superintendents' guarded warnings of "repercussions" and of the "danger" of signing a union card rightfully can be viewed as a "threat of reprisal" that forfeits the protection of § 8(c). N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 616, 89 S.Ct. 1918, 23 L. Ed.2d 547 (1969).

The Board's ruling that the dismissal of Hux violated § 8(a)(3) is well supported. Its decision is based on findings that other qualified employees were readily available to fill in for Hux, that the company's refusal to accept a replacement for an employee absent by necessity from a regular tour of duty was contrary to its practice, and that Hux—a known proponent of the union—was

1. See, e. g., J. P. Stevens & Co., Inc. v. N. L. R. B., 380 F.2d 292 (2d Cir.), cert. denied, 389 U.S. 1005, 88 S.Ct. 564, 19 L.Ed.2d 600 (1967) (Stevens I); Textile Workers Union of America, A.F.L.–C.I.O. v. N. L. R. B., 388 F.2d 896 (2d Cir. 1967), cert. denied, J. P. Stevens & Co. v. N. L. R. B., 393 U.S. 836, 89 S.Ct. 112, 21 L.Ed.2d 107 (1968) (Stevens II); J. P. Stevens & Co., Inc. v. N. L. R. B., 406 F.2d 1017 (4th Cir. 1968) (Stevens III and IV); J. P. Stevens & Co., Inc. v. N. L. R. B., 417 F.2d 533 (5th Cir. 1969) (Stevens V). Stevens' conduct is noted, not to prejudge its actions currently under review, but to disclose the context in which employees could reasonably interpret statements by the company. See N. L. R. B. v. Stowe Spinning Co., 336 U.S. 226, 231, 69 S.Ct. 541, 93 L.Ed. 638 (1949).

Other Stevens cases are: Black Hawk Corp., 177 NLRB No. 120 (1969), enf'd in part, 431 F.2d 900 (4th Cir. 1970) (Stevens VI); J. P. Stevens & Co., Inc., 179 NLRB No. 47 (1969), pending review, Nos. 28,631 and 29,037 (5th Cir.) (Stevens VII); J. P. Stevens & Co., Inc., 181 NLRB No. 97 (this proceeding) (Stevens VIII); J. P. Stevens & Co., Inc., 183 NLRB No. 5 (1970) (Stevens IX); Black Hawk Corp., 183 NLRB No. 34 (1970) (Stevens X).

treated differently from other employees whose jobs were filled by substitutes. The company, it should be noted, readily secured a substitute on Saturday. It is familiar law that "to support a finding of § 8(a) (3) violation, it is enough that a discriminatory motive was a factor in the employer's decision." Winchester Spinning Corp. v. N. L. R. B., 402 F.2d 299, 304 (4th Cir. 1968). And the Board may rely on circumstantial evidence of discrimination. N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 602, 61 S.Ct. 358, 85 L.Ed. 368 (1941); Corrie Corp. of Charleston v. N. L. R. B., 375 F.2d 149, 152 (4th Cir. 1967).

Finally, although the company attacks the Board's remedy as too broad, and the union challenges it as too narrow, I believe that it lies within the Board's administrative competence for reasons discussed by Chief Judge Brown in J. P. Stevens & Co. v. N. L. R. B., 417 F.2d 533 (5th Cir. 1969).

### ORDER DENYING PETITION FOR REHEARING

Upon consideration of the petition of the respondent, National Labor Relations Board, for a rehearing and of its suggestion for a rehearing en banc, it is

Ordered that the second paragraph of 597 of the opinion be, commencing "It startles," and it is hereby deleted, but with this exception, the said opinion be confirmed; and it is further

Ordered that the petition and suggestion in all other respects be denied, neither a majority of the judges who rendered the decision in this case, nor a majority of the Circuit Judges in regular active service having voted to grant the petition or the suggestion.

WINTER, CRAVEN and BUTZNER, Circuit Judges, dissenting from this order, with HAYNSWORTH, Chief Judge, not participating.