RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0098p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

HAMILTON COUNTY EDUCATION ASSOCIATION,

*Plaintiff-Appellant,*

*v.*

No. 15-5749

HAMILTON COUNTY BOARD OF EDUCATION,

*Defendant-Appellee*.

─────────────

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:14-cv-00105—Curtis L. Collier, District Judge.

Decided and Filed: April 20, 2016

Before: SUHRHEINRICH, McKEAGUE, and DONALD, Circuit Judges.

─────────────

**COUNSEL**

**ON BRIEF:** Richard L. Colbert, KAY, GRIFFIN, ENKEMA & COLBERT, PLLC, Nashville, Tennessee, for Appellant. D. Scott Bennett, Mary C. DeCamp, LEITNER, WILLIAM, DOLEY & NAPOLITAN, PLLC, Chattanooga, Tennessee, for Appellee.

─────────────

**OPINION**

─────────────

SUHRHEINRICH, Circuit Judge. Plaintiff-Appellant Hamilton County Education Association ("HCEA") is a voluntary association of employees of the Hamilton County Department of Education ("HCDE"). HCEA brought this lawsuit against its members' employer, Defendant-Appellee Hamilton County Board of Education ("Board"), asserting two violations of the Tennessee Education Professional Negotiations Act ("EPNA") and one

1

violation of 42 U.S.C. § 1983 for infringing on HCEA's First Amendment right of expressive association.  The parties filed cross-motions for summary judgment.  The district court granted the Board's motion, denied HCEA's motion, and dismissed the case.  HCEA appeals that decision.  We affirm.

## I.  Background

The facts in this case are largely undisputed.  HCEA was recognized by the Board under EPNA as the exclusive representative of all the Board's professional employees.  On May 19, 2011, HCEA and the Board entered into a collective bargaining agreement that was set to expire three years later on June 30, 2014.  While this agreement was in effect, the Tennessee legislature passed the Professional Educators Collaborative Conferencing Act ("PECCA"), which amended and replaced EPNA.  *See* 2011 Tenn. Pub. Acts ch. 378 (codified as amended at Tenn. Code Ann. §49-5-601 to -609 (2011)).  Under Tenn. Code Ann. § 49-5-604(b), however, PECCA would not govern the parties' relationship until the expiration of their existing agreement on June 30, 2014.  HCEA and the Board entered into the most recent (and final) version of their collective bargaining agreement under EPNA on September 20, 2013.

Although not yet applicable to the parties at the time of the underlying events, PECCA implemented two changes relevant to this case.  First, it created a new category of Board employees known as "management team" members who are no longer considered "professional employees" entitled to participate in concerted activities as part of a professional employee organization.  Tenn. Code. Ann. §§ 49-5-602(4), (8), (9), -603.  This "management team" includes principals and assistant principals.  *Id.* § 49-5-602(4).  PECCA also added a subsection making it unlawful for a professional employee organization to "[c]oerce or attempt to intimidate professional employees who choose not to join a professional employee organization."  *Id.* § 49-5-606(b)(7).

On September 17, 2013, HCEA held its Representative Assembly, a monthly meeting of HCEA representatives and building representatives.  Following this meeting, the HCEA Representative for Red Bank Middle School forwarded notes from the meeting to the Red Bank Middle School teachers.  One teacher who received the notes, Beth Morgan ("Morgan"),

contacted Stacy Stewart ("Stewart"), the Board's Assistant Superintendent for Human Resources, about the notes. Morgan expressed concern about a portion of the notes reporting "[h]orror stories" from other Tennessee counties where collective bargaining contracts expired, including teachers receiving a 118-page code of conduct and losing their retirement benefits. The notes suggested that if HCEA's membership dipped to less than a majority, its contract would become null and void and the county could require teachers to attend 40 hours of in-service, force them to work 10 hours a day, and discontinue medical coverage upon retirement. Morgan forwarded the notes from the Representative Assembly to Stewart. Following her conversation with Morgan, Stewart obtained other materials distributed at the Representative Assembly, including a promotional flyer that referred to a competing organization, the Professional Educators of Tennessee ("PET"), as a "cheap dime-store knockoff" and "a dime-store operation charging for services it cannot provide." Stewart also learned of comments made by HCEA President Sandra Hughes ("Hughes") at a principals' meeting encouraging the principals to maintain their HCEA membership and offering HCEA's continued support.

Based on this information, Stewart wrote a letter addressed to Hughes in her capacity as HCEA President. The letter addressed three issues. First, Stewart referred to the comments made at the principals' meeting and noted that, under PECCA, HCEA could not represent management team members such as principals and assistant principals nor count them among membership totals. Stewart concluded, "I trust that this information will be shared appropriately with any HCDE administrators who inquire about remaining members of the Association." Second, Stewart mentioned the statements from the Representative Assembly notes that described the potential consequences of decreased membership and suggested that these statements "could be construed as intimidating." Third, Stewart pointed to the promotional document distributed at the Representative Assembly that referred to PET in what Stewart described as "pejorative ways." Stewart concluded the letter by citing to PECCA's new prohibition on coercing or intimidating employees who choose not to join a professional organization and stating that "HCDE respectfully asks that HCEA and its representatives refrain from continuing such negative or coercive statements." While noting the Board's desire to maintain "a collaborative relationship" with HCEA, Stewart stated that "[c]ontinued such

coercion, however, will either result in an official request for a retraction of such statements or in clarification/correction of these statements by the district."

HCEA filed suit against the Board on the basis of this letter in Hamilton County Chancery Court on March 20, 2014. HCEA alleged that the letter violated two provisions of EPNA and infringed on its First Amendment right of expressive association. The Board removed the action to the United States District Court for the Eastern District of Tennessee. After discovery, both parties filed a motion for summary judgment. By this time, PECCA had replaced EPNA as the governing law between HCEA and the Board.

The district court granted the Board's motion for summary judgment and denied HCEA's motion. The court first found that HCEA's EPNA claims were not rendered moot by the intervening arrival of PECCA's effective date. Proceeding to the merits, the court held that Stewart's letter did not violate EPNA because the letter contained no threat of reprisal and thus "fell squarely within the protective space afforded to the Board [under Tenn. Code Ann. § 49-5-606(a)(5)] to 'express any views or opinions on the subject of employer-employee relations.'" As for the First Amendment claim, the district court ruled that Stewart's letter did not significantly burden HCEA's expressive activity and, therefore, did not violate HCEA's constitutional rights. HCEA timely appealed the district court's order.

The district court properly exercised jurisdiction over this case under 28 U.S.C. §§ 1331 and 1441. This court has jurisdiction over HCEA's appeal under 28 U.S.C. § 1291 as an appeal from the final decision of a United States district court.

## II.  Standard of Review

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment may be granted "unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). This standard of review does not differ when reviewing cross-motions for summary judgment versus a motion filed by only one party. *U.S. SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

## III. Analysis

### A. EPNA Claims

HCEA claims that the Board's letter violated two provisions of EPNA. First, HCEA asserts that the Board's comments violated § 49-5-606(a)(2) by interfering with, restraining, or coercing employees in the exercise of their rights under § 49-5-603, which protects professional employees' right to self-organization and other concerted activities. Second, HCEA alleges the Board dominated or interfered in the administration of HCEA and assisted its rival organization PET in violation of § 49-5-606(a)(7). The Board argues that both EPNA claims became moot in July 2014 when PECCA became effective between HCEA and the Board, thereby supplanting EPNA. The Board further asserts that, even if HCEA's EPNA claims are justiciable, they fail on the merits because the Board's letter merely exercised its right under EPNA § 49-5-606(a)(5) to express its views on employer-employee relations.

#### 1. Mootness

A case is moot only "when a live controversy no longer exists such that a court is no longer able to affect the legal relations between the parties." *Cam I, Inc. v. Louisville/Jefferson Cnty. Metro. Gov't*, 460 F.3d 717, 719–20 (6th Cir. 2006). A controversy does not cease to exist merely by virtue of a change in the applicable law. *Id.* at 720. Rather, the court should consider whether the new statute "is sufficiently similar to the repealed [statute] that it is permissible to say that the challenged conduct continues." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993). Stated another way, the question is whether the underlying statute "has been sufficiently altered so as to present a substantially different controversy." *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 823 (6th Cir. 2012) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors*, 508 U.S. at 662 n.3). "Where changes in the law arguably do not remove the harm or threatened harm underlying the dispute,

'the case remains alive and suitable for judicial determination.'"   *Hadix v. Johnson*, 144 F.3d 925, 933 (6th Cir. 1998) (quoting *Pub. Serv. Co. of Col. v. Shoshone-Bannock Tribes*, 30 F.3d 1203, 1205 (9th Cir. 1994)), *abrogated on other grounds by Miller v. French*, 530 U.S. 327 (2000).

The EPNA provisions invoked by HCEA's complaint continue to exist in identical form in PECCA, just in a different numbered section of the Tennessee Code.  *Compare* EPNA § 49-5-609(a)(2) (making it unlawful to "(2) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in § 49-5-603"), *and* EPNA § 49-5-609(a)(7) (making it unlawful to "(7) Dominate, interfere or assist in the administration of any professional employee organization"), *with* PECCA, § 49-5-606(a)(2) (making it unlawful to "(2) Interfere with, restrain or coerce employees in the exercise of rights guaranteed in § 49-5-603"), *and* PECCA § 49-5-606(a)(7) (making it unlawful to "(7) Dominate, interfere or assist in the administration of any professional employee organization").   As the district court rightly observed, "[m]erely renumbering a statute" in this fashion "does not constitute a 'repeal' of that statute such that a claim under that statute is moot."  Mem. Op. at 5 (citing *Cmty. Health Partners, Inc. v. Kentucky*, 230 F.3d 1357, at *1 n.1 (6th Cir. 2000) (unpublished table decision)).  The new and old statutes in this case are not only "sufficiently similar" to present the same controversy—they are totally identical.  The substance of the relevant EPNA provisions was not repealed or even altered, but, rather, reenacted in duplicate form in PECCA, thereby preserving the controversy between HCEA and the Board over whether Stewart's letter interfered with the exercise of employees' § 603 rights, interfered with the administration of HCEA, and assisted a rival organization. HCEA's EPNA claims are not moot.[1]

### 2.  Merits of the EPNA Claims

At the outset, the parties dispute whether this Court, in applying EPNA to HCEA's claims, should consult cases interpreting analogous provisions of the NLRA.   The NLRA contains two provisions that respectively correspond to the two EPNA provisions HCEA claims were violated by the Board.  EPNA's prohibition on interference with employees' rights parallels

---

[1]Unless otherwise stated, all citations in this opinion are to the current Tennessee Code—that is, PECCA.

§ 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), which makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." Likewise, EPNA's prohibition on employer domination of or interference with an employee organization resembles NLRA § 8(a)(2), 29 U.S.C. 158(a)(2), which makes it an unfair labor practice "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it." The NLRA also features a provision similar to Tenn. Code Ann. § 49-5-606(a)(5), which preserves the board of education's right to speak on matters pertaining to employer-employee relations. *See* 29 U.S.C. § 158(c) (The expressing of any views, argument, or opinion, or the dissemination thereof . . . shall not constitute or be evidence of an unfair labor practice.").

We agree with the district court that these NLRA provisions and the case law interpreting them provide helpful guidance in construing and applying the corresponding EPNA provisions at issue in this case. First, the relevant EPNA provisions are very similar to the corresponding sections of the NLRA; in some respects, they are exactly the same. As the district court observed, the Tennessee Court of Appeals recently resorted to NLRA jurisprudence in analyzing whether PECCA provided a teacher the right to have an association representative present during a disciplinary investigation. *See Union Cnty. Educ. Ass'n v. Union Cnty. Bd. of Educ.*, No. E2013-02686-COA-R3-CV, 2014 WL 4260812, at *4–6 (Tenn. Ct. App. Aug. 28, 2014). In doing so, the Tennessee court noted that the relevant PECCA provision "is very similar to, and was clearly modeled after, section 7 of the NLRA. Thus, although the NLRA is not applicable to this case, and the [case law interpreting it] is not binding, we consider them to be highly informative and persuasive." *Id.* at *6. The Tennessee court emphasized that NLRA case law issued before the enactment of EPNA in 1978 and PECCA in 2011 is especially relevant, as the Tennessee legislature is presumed to be aware of those opinions when it enacted the state laws. *Id.* at *6. The level of similarity between the relevant EPNA and NLRA provisions in this case is comparable to that in *Union Cnty. Educ. Ass'n.* Moreover, in contrast to the scarcity of Tennessee law interpreting § 49-5-606(a)(5), there is extensive federal law interpreting the analogous NLRA § 8(c). Some of that federal law preceded EPNA's original enactment in 1978, making it even more persuasive in understanding the legislative intent underlying § 49-5-606(a)(5). Second, the important terms in the relevant EPNA provisions here—"interfere,"

"coerce," "dominate," "assist," and "threat"—are susceptible to multiple layers of meaning. That flexibility distinguishes them from the unambiguous EPNA terms at issue in *Hamblen County Education Ass'n v. Hamblen County Board of Education*, 892 S.W.2d 428, 432 (Tenn. Ct. App. 1994), where the Tennessee Court of Appeals found it unnecessary to consult NLRA jurisprudence.

NLRA case law addressing the employer's right of expression under 29 U.S.C. § 158(c), while not binding, is especially helpful in this case because the district court's analysis turned on EPNA's analogous provision, now codified at § 49-5-606(a)(5). Present in both EPNA and PECCA, this subsection protects the board of education's right to "express any views or opinions on the subject of employer-employee relations; provided, however, that such expression shall contain no threat of reprimand, discharge or promise of benefits."[2] Tenn. Code Ann. § 49-5-606(a)(5). The district court found that the Tennessee legislature likely modeled this provision after § 8(c) of the NLRA, which provides, "[t]he expressing of any views, argument, or opinion, or the dissemination thereof . . . shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c). As the Supreme Court observed prior to EPNA's original enactment in 1978, this provision "implements the First Amendment." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969). Furthermore, it reflects a "congressional intent to encourage free debate on issues dividing labor and management." *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 67 (2008) (quoting *Linn v. Plant Guard Workers*, 383 U.S. 53, 62 (1966)).

The Supreme Court has recognized the tension between the employer's right of expression and the employees' right to be free from interference, restraint, or coercion in self-organizing. *Gissel Packing*, 395 U.S. at 617. "[A]ny balancing of those rights," the Supreme Court held, "must take into account the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up

---

[2]The EPNA version of this provision differs only slightly, providing that "the board of education or its designated representative may express any views, arguments or opinions on the subject of employer-employee relations; provided, that such expression contains no threat of reprimand, discharge or promise of benefits." EPNA § 49-5-609(a)(5).

intended implications of the latter that might be more readily dismissed by a more disinterested ear." *Id.*  In determining whether a statement is a coercive threat, "[i]t is unnecessary to show that any employee was in fact intimidated or coerced by the statements made." *Torbitt & Castleman, Inc. v. NLRB*, 123 F.3d 899, 906 (6th Cir. 1997).  "Rather, the test is whether the statement has 'a tendency to coerce.'"  *Id.* (quoting *NLRB v. Okun Bros. Shoe Store, Inc.*, 825 F.2d 102, 107 (6th Cir. 1987)).

In delineating between protected employer expression and impermissible threats, the district court relied on two Sixth Circuit cases, *DTR Industries, Inc. v. NLRB*, 39 F.3d 106 (6th Cir. 1994) (*DTR I*), and *DTR Industries, Inc. v. NLRB*, 297 F. App'x 487 (6th Cir. 2008) (*DTR II*).  Both cases involved an employer's statements about the potential negative effects of unionization at its company.  In *DTR I*, the court found that the employer's statements were protected because they were objective predictions that customers sole-sourcing with the employer were likely to split their business to ensure an alternative supply source in the event of a strike.  39 F.3d at 114.  *DTR II*, in contrast, found that the employer's similar predictions about sole-source business, when combined with an explicit statement that the decrease in business would lead to layoffs, constituted a coercive threat unprotected by NLRA § 8(c).  297 F. App'x at 493.  Based on these cases, the district court concluded that the Board's letter to Hughes was permissible employer expression because the only conceivable "threat" in the letter—an official request for a retraction of HCEA's statements or a statement by the Board correcting HCEA's statements—was "incomparable with the predictions of dire economic ruin" in *DTR II* and other cases where § 158(c)'s protection did not apply.

The district court correctly demarcated the line between threats and non-threats and rightly concluded that the Board's letter fell on the non-threatening side of the line.  HCEA resists this analysis with four arguments, none of which have merit.

First, HCEA argues that Stewart's statements were not protected because they did not express an opinion on the desirability of union presence or joining a union.  Appellant Br. 12, 14.  In rejecting a similar argument based on § 49-5-606(a)(5)'s structure, the district court correctly found that the language granting protection for employer expression is not limited to speech that could be construed as discrimination on the basis of union membership.  Rather, it broadly

protects "any views or opinions on the subject of employer-employee relations." Tenn. Code Ann. § 49-5-606(a)(5). This language, particularly "any views" and "the subject of employer-employee relations," comprehends a range of expression much broader than opinions on the desirability of unionism or union membership. And even though most cases dealing with employer expression, including those cited by the district court, involve comments on the merits of impending unionization in the employer's company, case law upholding the employer's right to expression is not limited to this circumstance. *See Fla. Steel Corp. v. NLRB*, 587 F.2d 735, 751–53 (5th Cir. 1979) (holding that company letter to employees advising them of their right to ask for an opportunity to obtain legal counsel before speaking with a NLRB agent following a failed union election was protected speech under the First Amendment and § 8(c)); *NLRB v. Monroe Tube Co.*, 545 F.2d 1320, 1325–27 (2d Cir. 1976) (ruling that employer did not interfere with employees' rights by advising them they could withdraw their union authorization cards and by supplying the address of the union headquarters for that purpose); *J.P. Stevens & Co. v. NLRB*, 449 F.2d 595, 597–98 (4th Cir. 1971) (holding that § 8(c) protected an employer's speech, undertaken to "correct any misunderstandings," informing employees that their signed union cards were not confidential and that the employer retained the right to discharge or discipline employees for cause); *NLRB v. Robinson*, 251 F.2d 639, 641 (6th Cir. 1958) (per curiam) (holding that an employer did not violate NLRA § 8(a)(1) by notifying strikers that they had been temporarily replaced and would be permanently replaced unless they reported for work because the statement simply stated the employer's "legal position that it was entitled to make employment replacements to take over the positions of the strikers").

Second, HCEA argues that Stewart's comments went beyond an expression of opinion by insisting that Hughes communicate Stewart's views to HCEA members and by ordering HCEA to refrain from certain statements. Appellant Br. 13. This argument incorrectly portrays Stewart's comments as orders rather than opinions. As we said in *Dayco Corp. v. NLRB*, 382 F.2d 577, 579 (6th Cir. 1967), "[a] single sentence contained in a letter or speech of an employer, cannot be considered apart from the entire statement and background in which it was made." HCEA places great weight on one sentence from the letter, where Stewart, after explaining that PECCA removes principals and assistant principals from the collaborative conferencing unit, stated, "I trust this information will be shared appropriately with any HCDE

administrators who inquire about remaining members of [HCEA]." While this statement could conceivably be read as a command in other contexts, here the full text of the letter confirms that Stewart's statement is a request rather than an order. Notably, Stewart did not seek to compel HCEA's compliance with this request by suggesting that noncompliance would result in any negative consequences. Although HCEA suggests that Stewart's statements interfered with its recruiting methods, the letter did not threaten discharge or any other disciplinary response, separating it from cases finding that employer speech impermissibly interfered with core union activities like soliciting members and presenting grievances. *See, e.g.*, *NLRB v. Clinton Elecs. Corp.*, 284 F.3d 731, 738–39 (7th Cir. 2002) (ruling that a written warning submitted to an employee for soliciting another employee to join a union violated § 8(a)(1) because the employer enforced its no-solicitation rule discriminatorily); *NLRB v. Almet, Inc.*, 987 F.2d 445, 452–53 (7th Cir. 1993) (holding that threatening to discipline employees for not reporting union solicitation violated § 8(a)(1)); *Trailmobile Div., Pullman Inc. v. NLRB*, 407 F.2d 1006, 1008 (5th Cir. 1969) (holding that threatening to discharge union secretary for presenting employee grievances violated § 8(a)(1)).

Third, HCEA contends that the district court incorrectly discounted Stewart's hiring and firing authority in determining whether the letter had a tendency to coerce. Appellant Br. 13. The district court correctly held that HCEA cannot rely solely on Stewart's authority to hire, discipline, and terminate employees to prove that her statements constituted coercion. Although Stewart's power over important personnel decisions is certainly relevant in demonstrating a tendency to coerce, it is not dispositive. Because Stewart's statements contained nothing that could be construed as a threat, even by an employee with knowledge of Stewart's hiring and firing power, we agree with the district court that the letter constitutes protected employer speech.

Finally, HCEA asserts that the district court did not sufficiently address its claim that the Board interfered with its administration and assisted a rival organization in violation of § 49-5-606(a)(7). Appellant Br. 15 & n.3. In fact, the district court decided this claim in the same manner it decided the interference claim under § 49-5-606(a)(2)—by holding that the letter fell within the Board's right to express its views under § 49-5-606(a)(5) and thus did not violate any

provisions of EPNA.  The employer's right to expression under § 49-5-606(a)(5) provides a defense against a claim of unlawful domination or assistance of an employee organization as much as it does against a claim of interference with, restraint, or coercion of employees' exercise of their rights.

Therefore, because the Board's letter expressed its views on employee-employer relations and contained no threat of reprimand or promise of benefit, the district court correctly granted summary judgment to the Board on HCEA's EPNA claims.

## B.  First Amendment Claim

In addition to its state-law claims, HCEA asserts that the Board violated its First Amendment right of expressive association by attempting to interfere with HCEA's membership. Appellant Br. 21.  We analyze expressive association claims under a three-step test: (1) whether the group is entitled to protection by engaging in expressive activity that could be impaired, (2) whether the challenged government action significantly burdens the group's expression (affording deference to an association's view of what would impair its expression), and (3) whether the government's interest in any restriction outweighs the plaintiff's right of expressive association.  *Miller v. City of Cincinnati*, 622 F.3d 524, 538 (6th Cir. 2010).  We agree with the district court that the Board's letter did not impose a burden on HCEA's speech.

A significant burden requires government action that "directly or indirectly interferes with group membership," *id.*, or that hinders a group's expression as a result of its interference with group membership, *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 653–54 (2000).  The government may not establish "a general prohibition against certain forms of advocacy" or "impos[e] sanctions for the expression of particular views it opposes."  *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 464 (1979) (per curiam).  A group claiming infringement of its right to expressive association may not rely on generalizations to show a burden on its expression, but rather must support that claim of burden by evidence in the record. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 627–28 (1984).  A government entity may not burden the expressive association of a union or its members by "prohibit[ing] its employees from joining

together in a union, or from persuading others to do so, or from advocating any particular ideas." *Ark. State Highway Emps.*, 441 U.S. at 465.

Under these standards, the Board's letter did not interfere with HCEA's membership or significantly burden its expression. Nothing in the Board's letter "affects the internal membership decisions" of HCEA. *Miller*, 622 F.3d at 538. While expressing its view that HCEA should inform principals and assistant principals of their altered status under PECCA, the Board did not dictate whether HCEA could accept principals and assistant principals as members. In fact, the letter explicitly recognized that "if an administrator wants to continue to pay dues to [an employee] organization, including HCEA, they certainly may." Similarly, the letter's request that HCEA refrain from making comments the Board rightly or wrongly believed to be improper did not constitute a "a general prohibition against certain forms of advocacy," nor did it "impos[e] sanctions for the expression of particular views." *Ark. State Highways Emps.*, 441 U.S. at 464. Rather, the Board "respectfully ask[ed] that HCEA and its representatives refrain from continuing such negative or coercive comments" and alerted HCEA that "[c]ontinued such coercion . . . will either result in an official request for a retraction of such statements or in clarification/correction of these statements by the district." Thus, the letter did not forbid the allegedly intimidating comments, nor did it threaten any negative consequences beyond its own protected expression for a failure to cease such comments. In sum, none of the letter's statements hindered employees' association with HCEA, prevented employees from soliciting others to join HCEA, or discouraged HCEA from advocating on behalf of its members. *Cf. Thomas v. Collins*, 323 U.S. 516, 535-38 (1945) (holding that a law forbidding solicitation of union membership without obtaining an organizer's card infringed on the right of speech and assembly to inform people of the advantages of union membership and persuade them to join a specific union); *Columbus Educ. Ass'n v. Columbus City Sch. Dist.*, 623 F.2d 1155, 1159 (6th Cir. 1980) (holding that a reprimand letter sent in response to a teacher's union representation of a fellow employee's grievance infringed on the teacher's right of free association).

HCEA suggests that the Board's letter prevented HCEA from admitting desired members and controlling the content of its recruiting speech, but the record shows that HCEA did not adjust its recruiting methods, much less turn away willing members, in response to the  Board's

letter. While we must "give deference to an association's view of what would impair its expression," *Boy Scouts*, 530 U.S. at 653, we agree with the district court that "such deference has its limits." Thus, we need not accept HCEA's claim of impairment when it has failed to demonstrate how the Board's letter either disrupts its ability to associate or substantially weakens its message by imposing restrictions on association. *See U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 600 (6th Cir. 2013) (recognizing that a court must afford deference to a group's view of what impairs its expression yet finding that the plaintiffs failed to show how the Affordable Care Act's individual mandate significantly burdened the group's expression).

Because the Board's letter did not significantly burden HCEA's right to expressive association, the district court correctly granted summary judgment to the Board on the First Amendment claim. As a result, we do not address whether HCEA is an expressive association entitled to constitutional protection[3] or whether governmental interests in restriction outweigh HCEA's right to association.

## IV. Conclusion

For these reasons, we **AFFIRM** the district court's decision granting summary judgment to the Board and denying summary judgment to HCEA.

---

[3]The parties vigorously dispute whether HCEA is entitled to constitutional protection in their briefing. Because HCEA's association is undertaken in the context of its members' public employment, HCEA's expressive association claim would be analyzed under the same standard as state employees' freedom of speech claims. *See Akers v. McGinnis*, 352 F.3d 1030, 1036 (6th Cir. 2003). Therefore, in order for the Board's action to be subject to intermediate scrutiny, HCEA would have to show not only that it is an expressive association, but also that its association touched on a matter of public concern. *See id.* at 1037. Union-related association, however, does not inherently touch on a matter of public concern. *Boals v. Gray*, 775 F.2d 686, 693 (6th Cir. 1985). Thus, it is not immediately apparent whether the expressive association allegedly burdened in this case touched on a matter of public concern. But this case is not the case to address this conundrum, as it would be very difficult to isolate the exact nature of the expressive association at issue when we have decided that HCEA's association was not significantly burdened in any way.