RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0138p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

SHANNON M. BLICK,

*Plaintiff-Appellant*,

*v.*

ANN ARBOR PUBLIC SCHOOL DISTRICT; ANN ARBOR
BOARD OF EDUCATION; SHONTA A. LANGFORD; DAWN
LINDEN; JEANICE KERR SWIFT,

*Defendants-Appellees*.

⎫
⎬
⎭

No. 23-1523

────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:19-cv-12127—Gershwin A. Drain, District Judge.

Argued: January 24, 2024

Decided and Filed: June 27, 2024

Before: McKEAGUE, LARSEN, and MURPHY, Circuit Judges.

────────────────

## COUNSEL

────────────────

**ARGUED:** William G. Tishkoff, TISHKOFF PLLC, Ann Arbor, Michigan, for Appellant.
Anne-Marie V. Welch, CLARK HILL PLC, Birmingham, Michigan, for Appellees. **ON
BRIEF:** William G. Tishkoff, TISHKOFF PLLC, Ann Arbor, Michigan, for Appellant. Anne-
Marie V. Welch, Stephanie V. Romeo, CLARK HILL PLC, Birmingham, Michigan, for
Appellees.

────────────────

## OPINION

────────────────

MURPHY, Circuit Judge. For years, Shannon Blick successfully served as a well-liked
principal of an elementary school in the Ann Arbor Public School District. In 2019, however,

the school district placed her on paid leave to investigate her role in a custodian's over-billing scheme. The leave lasted two years, and the school district then terminated Blick's contract. Blick brought this suit while still on leave. She alleged that various officials violated her freedoms of speech and association under the First Amendment. She also brought race-discrimination, due-process, and conspiracy claims against these officials. The district court rejected Blick's First Amendment claims at the summary-judgment stage, and it dismissed the other claims on the pleadings.

Blick renews all claims on appeal. Although we find some of the district court's reasoning open to debate, Blick has not shown a reversible error. She argues that the school district violated the First Amendment by imposing a prior restraint that barred her from speaking during her leave and by taking harmful actions against her in retaliation for her speech. But her lawyers leave us in the dark about what she *wanted* to say (for purposes of her "prior restraint" claim) or what she *did* say (for purposes of her "retaliation" claim). Blick also relies on adverse actions (such as the termination of her contract) that occurred after she filed her operative complaint. But we cannot consider these later events because her lawyers did not file a supplemental pleading to bring them into the case. And Blick's opening brief merely regurgitates much of her response to the school district's motion to dismiss. By doing so, it ignores several grounds on which the district court relied to dismiss Blick's claims. This "cut-and-paste" briefing strategy thus does not preserve Blick's challenges to much of the district court's motion-to-dismiss decision. We affirm.

I

In September 2013, Blick became the principal of Lawton Elementary School in Ann Arbor, Michigan. Over the next several school years, the Ann Arbor Public School District consistently evaluated Blick as a "Highly Effective" principal. Blick Aff., R.64-2, PageID 1903. From 2013 through 2018, she also had a spotless record without any formal or informal discipline.

But things changed during the 2018–2019 school year. At the end of the prior year, the school district promoted Lawton's assistant principal to a position at a different school.

According to Blick, the district selected the assistant principal's replacement, Taneia Giles, in an unusual way because it did not seek input from Blick or anyone else in the Lawton community. Dawn Linden, the Executive Director of Elementary Education, allegedly told Blick that the district gave Giles, an African American, this position because the district feared losing "a minority administrator." Am. Compl., R.14, PageID 97. Giles also allegedly "coveted" Blick's position as principal. *Id.*, PageID 92.

In February 2019, Blick and Giles learned from an assistant that Lawton had nearly exhausted the funds in a lunchroom account that the school used to pay lunch-period supervisors. Blick investigated where this money had gone. She had previously assigned Willie Johnson, a Lawton custodian, to serve as a lunch-period supervisor. Blick discovered that Johnson had been obtaining excessive wages by fraudulently entering four hours on his timesheet for this one hour of lunch work. Even worse, at the start of the 2018–2019 school year, the school district had tasked Blick with formally approving all employee timesheets (including Johnson's). Blick realized that, since this administrative change, she had been mistakenly approving Johnson's timesheets without noticing the excessive entries.

Blick and Giles decided to jointly raise this issue with Linden. According to Blick, however, Giles went behind her back to inform Linden on her own. Linden, and the school district's HR Executive Director, Shonta Langford, opened an investigation. At first, they obtained Blick's help. Blick interviewed Johnson, who claimed that he had billed the extra hours because of other work at the school. But security cameras proved that Johnson lied. The school district fired him at Blick's request.

But this personnel action did not end the matter. The investigation eventually implicated Blick in Johnson's fraud. The assistant who discovered the depleted school account told Linden and Langford that she had flagged Johnson's excessive timesheets to Blick in the past but that Blick had ignored her concerns. Giles also offered a reason why Blick might have done nothing. Johnson's former supervisor had told her that Johnson and Blick were having "a sexual relationship." Giles Dep., R.61-2, PageID 1272. According to Blick, Giles made this false allegation (and accused Blick of assisting Johnson's fraud) because of her desire to become Lawton's principal. Giles had also made other allegedly false claims against Blick at the start of

the school year.  Nevertheless, Linden and Langford separately interviewed Johnson's former supervisor, who reiterated that Johnson had said that he and Blick were in "a romantic relationship."  Langford Dep., R.61-7, PageID 1399.

Due to Blick's potential involvement, Linden and Langford placed her on administrative leave on April 25.  Blick received full pay and benefits during her leave.  In Langford's letter recording this action, she instructed Blick "not to contact any students, parents, or staff regarding this matter" or to "enter" school district property.  Letter, R.61-20, PageID 1697.  Yet Blick's three children attended Lawton.  So Langford also clarified that Blick could visit the school when attending to "matters" involving her children.  *Id.*  The next week, Linden sent the entire "Lawton Community" (including parents) an email informing them that Blick had taken a "leave of absence" and had "ask[ed] that you please respect her privacy."  Email, R.64-11, PageID 2283.  According to Blick, she had done no such thing.

In early May, Linden instructed Blick to attend a "follow up interview" with her and Langford about "the ongoing investigation."  Email, R.61-33, PageID 1779.  At this meeting, Langford confronted Blick with the allegations of her affair with Johnson.  Blick, who was happily married, "began hyperventilating and became emotional."  Blick Dep., R.61-5, PageID 1322.  She adamantly denied the claim.  Linden then switched topics.  She told Blick that a group of Lawton parents planned to "rally" others to attend a school-board meeting on May 8 as a show of support for Blick.  *Id.*, PageID 1326.  But if the parents publicized the matter, Linden warned, a reporter who regularly attended these meetings might acquire Blick's personnel file. So Linden asked her to persuade these parents not to attend the meeting.  Although Linden did not order Blick to call the parents, Linden "implied" that the "sex claims" in her "file" would come out if Blick did not make the calls.  *Id.*, PageID 1327, 1343.  Blick successfully persuaded the primary parent to cancel the planned show of support.

The investigation dragged on for months.  Frustrated by its slow pace, Blick sued while still on paid leave in July 2019.  Four days later, Linden reported the fraud allegations against Johnson to the Ann Arbor Police Department.  She implicated Blick to the police.  School officials chose to delay any personnel action against Blick until the police issued their findings. As far as the record reveals, the department took many months to complete its investigation.  In

February 2020, the police found that Blick and Johnson had "engaged in a common scheme to defraud" the school district of about $25,187.77. Rep., R.61-15, PageID 1649. They recommended criminal charges. Prosecutors charged Johnson, and he later pleaded guilty. But they did not charge Blick.

Over this period, Blick alleges that school officials took many harmful actions against her. To list a few examples, Blick claims that officials barred her from attending some of her children's school events, including her daughter's choir concert and a graduation ceremony at which her son sang. She also alleged that the officials did not allow her to coach her children's soccer team. And she alleges that officials barred her from speaking with anyone in the Lawton community about anything, not just the investigation.

After the criminal proceedings ended, Langford reopened the district's investigation of Blick. In March 2021, Langford notified her that the school board might decline to renew her administrative contract because of her failure to "properly safeguard" school funds. Letter, R.61-48, PageID 1835. Langford told Blick that she had a right to meet with the board. Blick spoke at a board meeting the next month. The board still declined to renew her contract. The contract expired in June 2021. Two months later, though, the district reassigned Blick to an educational role as an online teacher for first graders in its "Virtual Village."

Blick's lawsuit remained pending over this two-year period. She sued, among others, the school district, the district's superintendent, its deputy superintendent for human resources, Linden, Langford, and Giles under 42 U.S.C. § 1983 and other federal and state laws. In her amended complaint, Blick alleged that the school officials violated the First Amendment by prohibiting her from speaking to—and associating with—the Lawton community during her leave. She also alleged that school officials retaliated against her when she opted to speak. Apart from her First Amendment claims, she alleged that school officials discriminated against her because she is white in violation of the Equal Protection Clause, Title VII, and Michigan's Elliott-Larsen Civil Rights Act. And she alleged that the officials violated the Due Process Clause by failing to give her a hearing before placing her on leave. Lastly, she alleged that the officials engaged in a civil conspiracy to violate her rights.

The district court dismissed half of Blick's claims at the pleading stage and rejected the other half at the summary-judgment stage. It first held that her complaint failed to plausibly plead her discrimination, due-process, and conspiracy claims. *See Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 721–24, 728–31, 732–33 (E.D. Mich. 2021). But it allowed her First Amendment claims to proceed to discovery. *See id.* at 724–28. Yet Blick's partial victory proved short lived because the court then granted summary judgment on those claims. *See Blick v. Ann Arbor Pub. Sch. Dist.*, 674 F. Supp. 3d 400, 422–37 (E.D. Mich. 2023).

Blick appeals all the claims that the district court rejected across its motion-to-dismiss and summary-judgment decisions. We review both decisions de novo. *See Lichtenstein v. Hargett*, 83 F.4th 575, 582 (6th Cir. 2023); *Gambrel v. Knox County*, 25 F.4th 391, 399 (6th Cir. 2022).

## II. First Amendment Claims

On appeal, Blick primarily renews her First Amendment claims under 42 U.S.C. § 1983. She argues that various school officials violated her freedoms of speech and association.

In litigating these claims, each side has missed important aspects of § 1983 or federal civil procedure. Three overlooked issues affect the nature of our review, so we flag them now. Issue One: Section 1983 bars plaintiffs from holding one official liable for another's actions, so plaintiffs must show that each sued official engaged in unlawful conduct. *See Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 934–35 (6th Cir. 2020). Yet Blick's briefing repeatedly lumps all "Appellees" together and treats them as a single actor. We caution litigants that this strategy might forfeit § 1983 claims if it requires us to scour the record to identify how a jury could find a defendant liable based on that defendant's acts. *Cf. Dibrell v. City of Knoxville*, 984 F.3d 1156, 1163 (6th Cir. 2021). We need not impose this rule here, though, because Blick's claims fail even if we treat all the defendants as a single actor (whom we will call the "School District").

Issue Two: The filing of the operative complaint "fixes the controversy" as of that date, and federal courts will not consider post-complaint factual developments. *El-Khali v. Usen*, 2021 WL 4621828, at *4 (6th Cir. Oct. 7, 2021) (citation omitted); *cf. Davis v. Echo Valley*

*Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019).  So plaintiffs should file a "supplemental" complaint under Federal Rule of Civil Procedure 15(d) if they seek to raise a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d); 6A Charles A. Wright et al., *Federal Practice & Procedure* § 1504, at 253–54 (3d ed. 2010).  Blick's counsel ignored this rule.  They filed her operative complaint on October 22, 2019.  But they challenge many of the School District's later actions, including its continued suspension of Blick and refusal to renew her contract in 2021.  Because Blick did not file a supplemental complaint, she may not challenge these actions in this suit.  *See El-Khali*, 2021 WL 4621828, at *4.

Issue Three: Section 1983 has a qualified-immunity defense that limits a plaintiff's ability to obtain damages from state officials.  Plaintiffs must prove not just that the officials violated the Constitution but also that all reasonable people would have recognized that their conduct violated the law.  *See District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018).  Yet defense counsel did not raise a qualified-immunity defense for any of the school officials that Blick sued either in the district court or on appeal.  We thus will not rely on qualified immunity to resolve Blick's claims.  *See Summe v. Kenton Cnty. Clerk's Off.*, 604 F.3d 257, 269–70 (6th Cir. 2010).

In sum, we will ignore § 1983's normal defendant-by-defendant approach to liability because it makes no difference in this case.  We will limit our review to the events that happened before October 22, 2019.  And we will consider only the First Amendment questions on the merits, not any qualified-immunity defense that might have been raised.  With this understanding, we turn to Blick's freedom-of-speech and freedom-of-association claims.

## A. Freedom of Speech

Courts recognize both "prior restraint" claims and "retaliation" claims under the Free Speech Clause.  *Baar v. Jefferson Cnty. Bd. of Educ.*, 311 F. App'x 817, 821 (6th Cir. 2009); *see Barone v. City of Springfield*, 902 F.3d 1091, 1098, 1101–02 (9th Cir. 2018); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009).  Blick raises both types of claims.  She says that the School District restricted her ability to speak when it placed her on leave.  And she says that the District

punished her when she nevertheless chose to speak. We start by differentiating these two free-speech theories before applying this law to Blick's claims.

### 1. Prior-Restraint v. Retaliation Claims

As incorporated by the Fourteenth Amendment, the First Amendment bars States from "abridging the freedom of speech[.]" U.S. Const. amend. I; *see Stromberg v. California*, 283 U.S. 359, 368 (1931). States most often run afoul of this right when they act in their regulatory capacity to prohibit the speech of private citizens on threat of criminal or civil punishment. *See, e.g.*, *Counterman v. Colorado*, 600 U.S. 66, 73–82 (2023). But they can also abridge the freedom of speech when they act in their employer capacity to restrict the speech of public employees on threat of termination or other discipline. *See Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). At the same time, States have far greater freedom to restrict speech when they wear their employer (rather than their regulator) "hats." *See United States v. Nat'l Treasury Emps. Union* (*NTEU*), 513 U.S. 454, 465 (1995). Public employers have attempted to exercise this greater freedom to restrict employee speech in different ways.

*Retaliation*. Most often, a public employer disciplines employees for their *past* speech on the ground that the speech hindered the employer's operations. *See Bennett v. Metro. Gov't of Nashville & Davidson Cnty.*, 977 F.3d 530, 533–36 (6th Cir. 2020); *Gillis v. Miller*, 845 F.3d 677, 681–83 (6th Cir. 2017). In *Pickering*, for example, a school board fired a teacher for writing a letter to a newspaper editor criticizing the board's proposed bond levy. 391 U.S. at 564–65.

To decide whether the First Amendment protects past speech, the Supreme Court "proceed[s] in two steps." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022). At step one, the Court's doctrine protects past speech only if the speech survives two bright-line rules. Employees must speak as private citizens, not as part of their "official" job duties. *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). And they must speak on a topic of "public concern," not personal concern. *Connick v. Myers*, 461 U.S. 138, 146 (1983). If the speech passes these two tests, the Supreme Court engages in a "balance" of interests at the second step. *Pickering*,

391 U.S. at 568. Even if employees speak off the clock on a matter of public concern, the employer can punish them for their speech if its interests in its operations outweigh the employees' interests in speaking. *See Kennedy*, 597 U.S. at 528.

If the First Amendment protects past speech, employees must establish two other well-known elements to prove a retaliation claim under § 1983. They must show that their employer took a harmful "adverse action" against them—meaning one that would deter the average employee from speaking. *Myers v. City of Centerville*, 41 F.4th 746, 759 (6th Cir. 2022) (citation omitted). And they must show that their protected past speech at least partially "motivated" this harmful action. *Id.* (citation omitted). If an employee satisfies these second and third elements, employers can avoid liability by proving that they would have taken the same harmful action even if the employee had not spoken. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Lemaster v. Lawrence County*, 65 F.4th 302, 309–10 (6th Cir. 2023).

*Prior Restraint*. Other times, public employers adopt employee-targeted "prior restraints" on speech by prohibiting employees from speaking about certain topics in the *future* (on the threat of discipline). *Baar*, 311 F. App'x at 821; *see, e.g.*, *Farhat v. Jopke*, 370 F.3d 580, 598 (6th Cir. 2004); *Swartzwelder v. McNeilly*, 297 F.3d 228, 235–36 (3d Cir. 2002) (Alito, J.). In *NTEU*, for example, Congress barred most federal employees from making any speeches or writing any articles for which they would receive compensation. 513 U.S. at 458–59.

These types of prior restraints on future speech raise two questions that matter here. First, how should courts evaluate whether a prior restraint covers constitutionally protected speech? The Supreme Court has suggested that the government has a "greater" "burden" to justify a *broad* restraint reaching many employees and topics. *Id.* at 468; *see Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 104 (3d Cir. 2022); *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 749–50 (7th Cir. 1999). But its cases leave unclear how to treat a *narrow* restraint that covers only a few employees. *Cf. Arndt v. Koby*, 309 F.3d 1247, 1252 n.3 (10th Cir. 2002). When assessing such a restraint, our cases have followed the same two-step approach that we use to evaluate past speech. *See Baar*, 311 F. App'x at 821; *see also Whitney v. City of Milan*, 677 F.3d 292, 296 (6th Cir. 2012); *Jackson v. City of*

*Columbus*, 194 F.3d 737, 744–47 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002). And because Blick does not argue for stricter scrutiny, we may assume that this usual test applies here.

Second, apart from showing that the prior restraint covers potentially protected expression, what other "requirements" must employees establish to prove a prior-restraint claim under § 1983? *Fairley*, 578 F.3d at 525. The answer depends at least in part on the relief that employees seek. Employees typically request injunctions to prohibit enforcement of a challenged restraint. *See, e.g.*, *NTEU*, 513 U.S. at 477–80; *Edgar v. Haines*, 2 F.4th 298, 309 (4th Cir. 2021); *Amalgamated Transit Union*, 39 F.4th at 102–04; *Milwaukee Police Ass'n*, 192 F.3d at 745. That makes sense. These claims challenge limits on *future* speech because employees sue before they speak to avoid the discipline that they might face if they do. *See Swartzwelder*, 297 F.3d at 232–33. Different types of injunctions require different showings. If employees seek a broad injunction through a "facial" or "overbreadth" challenge, they must show that the prior restraint has a "*substantial number*" of unconstitutional applications as compared to its "plainly legitimate sweep." *Edgar*, 2 F.4th at 313 (citation omitted); *see United States v. Hansen*, 599 U.S. 762, 769–70 (2023); *Graham v. City of Mentor*, 118 F. App'x 27, 31 (6th Cir. 2004). If, by contrast, employees seek a narrow injunction "as applied" to the speech they wish to convey, they must show that the First Amendment protects that specific speech. *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 570 (6th Cir. 2012); *cf. Maldonado v. City of Altus*, 433 F.3d 1294, 1310–14 (10th Cir. 2006).

What about damages? Unlike employees who challenge a prior restraint on its face, employees who seek "monetary relief" may not invoke hypothetical applications of the restraint to speech not at issue in the case. *See Davis v. Colerain Township*, 51 F.4th 164, 176 (6th Cir. 2022). They instead may seek damages only for the speech that they sought to convey. *See id.* If they prove that they would have spoken but refrained from doing so because of the prior restraint, some cases suggest that they can seek nominal or general damages for this intangible harm. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797–802 (2021); *Risdal v. Halford*, 209 F.3d 1071, 1072 (8th Cir. 2000); *Gilpin v. Am. Fed'n of State, Cnty., and Mun. Emps., AFL-CIO*, 875 F.2d 1310, 1314 (7th Cir. 1989); *Walje v. City of Winchester*, 773 F.2d 729, 731–32 (6th Cir.

1985). If, by contrast, they allege a tangible injury, they must show that the prior restraint caused the injury. *See Fairley*, 578 F.3d at 526. Perhaps the employee quit and lost income rather than abide by the restraint. *See id.* Or maybe the employer terminated the employee when she refused to sign a contract that included the restraint. *See Barone*, 902 F.3d at 1101–06.

## 2. Blick's Prior-Restraint and Retaliation Claims

Blick pursues both claims on appeal. She argues that the School District violated the First Amendment by imposing a "prior restraint" on her speech and that it took adverse actions against her in "retaliation" for her speech. Both claims share a common defect. Blick's briefing on her prior-restraint claim leaves unclear what expression she wanted to convey. And her briefing on her retaliation claim leaves unclear what speech she did say to trigger the alleged adverse actions.

*Prior-Restraint Claim*. Blick's prior-restraint claim challenges the speech limits that the School District imposed when it placed her on leave. The parties disagree over two aspects of this claim. They initially dispute the restraint's scope. According to Blick, the School District broadly barred her from speaking to the "Lawton community" about *anything*. Appellant's Br. 21. She suggests that it restricted her ability to speak with her children's teachers about their "education and needs[.]" *Id.* at 25. She also suggests that she could not speak with parents and teachers generally about the "welfare and educational needs" of Lawton students. *Id.* And she suggests that she could not speak at the school-board meeting when parents sought to show their support for her. *Id.* at 22–23. According to the School District, it narrowly barred Blick from talking with parents, teachers, and students *about the investigation* into Johnson's fraud. As support for this claim, the District notes that the letter placing Blick on leave instructed her "not to contact any students, parents, or staff regarding this matter." Letter, R.61-20, PageID 1697. It also highlights evidence that Blick continued to speak with friends (parents and teachers) about personal matters and with her children's teachers about their education. *Blick*, 674 F. Supp. 3d at 417–19.

The parties next debate whether the prior restraint covered topics that the First Amendment protects. According to Blick, the banned speech about her suspension or the

education at Lawton raised public concerns important to the community. Appellant's Br. 25. She adds that a dispute of fact exists over whether her interests in speaking on these topics "outweighed" the School District's interests. *Id.* at 28–29. According to the School District, Blick's speech to friends about personal matters or teachers about her children's education would not have addressed "a matter of public concern" even if the court accepts Blick's view of the restraint. *Whitney*, 677 F.3d at 297. And the District argues that the speech limit it imposed on Blick furthered its interest in preventing interference with its "investigation" under *Pickering* balancing. *Farhat*, 370 F.3d at 598.

We find these debates beside the point. Blick asks us to evaluate whether the restraint *on its face* covered any *hypothetical* speech that the First Amendment would protect in the abstract. She does not ask us to decide whether the prior restraint violated the First Amendment *as applied* to the *specific* speech that she sought to express. She thus impliedly asserts the type of overbreadth claim that allows courts to consider "hypotheticals" about a restriction's application to speech not at issue in a case. *Hansen*, 599 U.S. at 783 n.5. But Blick's briefing does not raise—let alone preserve—a "facial challenge" to the School District's alleged policy of barring staff on leave from communicating with teachers or parents. *Edgar*, 2 F.4th at 313. As far as we can tell, Blick instead seeks only damages at this point—a form of relief that does not permit her to litigate an "overbreadth" challenge. *See Davis*, 51 F.4th at 176. She may seek damages only for the speech that she sought to convey or the injuries caused by her inability to speak. *See id.*

This fact poses a problem for her. She points us to no evidence identifying the speech that she sought to express. Her own briefing proves the point. It relies on speech that other people wanted to convey. Blick notes, for example, that the School District told Lawton staff that the "[r]equest is no contact" after a teacher asked about sending "supporting texts" to Blick. Cooke Aff., R.64-8, PageID 2255. Blick adds that parents wanted to speak at the school-board meeting to "rally" support for her. Blick Dep., R.61-5, PageID 1326. But this allegedly squelched speech by *others* does nothing to show that *Blick herself* sought to speak.

Without evidence or briefing showing what Blick intended to say, we cannot engage in the "fact specific" inquiry over whether the First Amendment would have protected her speech. *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 764 (11th Cir.

1991).  Consider a generic example.  Governments have an important interest in protecting the integrity of their investigations into potential misconduct.  *See Farhat*, 370 F.3d at 598.  Whether this interest trumps an employee's interest in speaking likely depends on what the employee wants to say.  Did the employee want to speak to potential witnesses to influence their statements about what happened?  Or did the employee want to speak to the media to respond to the government's allegedly false claims?  The required *Pickering* "balancing" may come out differently for each type of speech.  Now consider a specific example.  Blick claims in passing that she had an interest in speaking about the "welfare and educational needs" of Lawton students.  Appellant's Br. 25.  But her "official" job duties as a principal of Lawton would include a good deal of speech fitting this description—which would disqualify it from First Amendment protection.  *Garcetti*, 547 U.S. at 421.  So how can we determine whether general speech about the education at Lawton would have fallen within or outside those duties if Blick does not tell us what she intended to say?

True, we have held that a city's police chief stated a prior-restraint claim when the chief alleged that the city imposed a "gag order" that barred him from speaking to the media about an investigation into his misconduct.  *Jackson*, 194 F.3d at 744, 746–47.  While engaging in *Pickering* balancing, we acknowledged that the complaint did not allege what the chief would have said to the media if the city had not imposed this gag order.  *Id.* at 747.  But we drew the "reasonable inference" that the chief "would have spoken out about the investigation but for the gag order."  *Id.*  Unlike the claim in *Jackson*, however, Blick's claim has proceeded past the pleading stage.  On summary judgment, she had a duty to cite "specific evidence" creating a genuine issue of material fact that she would have spoken but for the prior restraint.  *Rudd v. City of Norton Shores*, 2023 WL 3886404, at *9 (6th Cir. June 8, 2023) (quoting *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 842 (6th Cir. 2021)).  Her claim fails because she has not done so.

*Retaliation Claim*.  Blick alternatively argues that the School District retaliated against her because she spoke in violation of the District's prior restraint.  What did the District do?  She alleges that it falsely implicated her in its "criminal complaint" to the police about Johnson's fraud; "blocked" her from coaching her children's soccer team or serving as a room parent for

her daughter's class; and "harassed" her children in other ways. Appellant's Br. 35–36. The district court concluded that none of these actions qualified as sufficiently "adverse" because none would deter an average employee from speaking. *See Blick*, 674 F. Supp. 3d at 432–33. It thus held that Blick could not meet the second element of her retaliation claim. *See id.*

We opt not to resolve Blick's appeal on this ground. The claim fails for a more basic reason. An employee must have engaged in "protected speech" to establish a First Amendment retaliation claim. *Myers*, 41 F.4th at 759 (citation omitted). What was Blick's "protected speech"? We have no idea. Her opening brief asserted that she made "numerous attempts to exercise her First Amendment rights" without identifying any past speech with specificity. Appellant's Br. 35. It then jumped over this protected-speech element on the purported ground that the School District challenged "only the adverse action and causation elements" of her claim. *Id.* Yet the District's response clarified its view that Blick could not prove "the first element of her retaliation claim" because she did not engage in protected speech. Appellee's Br. 35 & n.10. Blick's reply ignored this response. Reply Br. 15–17. She has thus forfeited the argument that she engaged in protected speech because she failed to adequately develop it. *See A.K. v. Durham Sch. Servs., L.P.*, 969 F.3d 625, 631 (6th Cir. 2020). And without protected speech, her retaliation claim fails.

## B. Freedom of Association

Apart from her two free-speech claims, Blick also argues that the School District violated the First Amendment by prohibiting her from freely associating with Lawton parents and with her children. The First Amendment right to the "freedom of speech" protects against not just regulations that directly suppress speech but also those that target activities useful for speaking. *See Lichtenstein*, 83 F.4th at 585. So, for example, a State cannot ban the sale of ink to parties who seek to make "political pamphlets" criticizing the government. *Id.* (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011)). The same logic underlies the right to expressive association. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). People often can better disseminate a "shared point of view" by collaborating with each other to spread it. *Lichtenstein*, 83 F.4th at 602. If the First Amendment did not protect these collaborative efforts, the government could effectively "silence" speech by indirectly banning those efforts rather than

directly banning the speech. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 68 (2006).

When considering whether state action violates this right of expressive association, our cases ask three questions. *See Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. of Educ.* (*HCEA*), 822 F.3d 831, 840 (6th Cir. 2016). First, can the identified group seek freedom-of-association "protection" because its members associate partly to express a message? *Miller v. City of Cincinnati*, 622 F.3d 524, 538 (6th Cir. 2010); *see Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 655 (2000). Second, does the challenged state action "significantly burden" the group's ability to spread its message? *Lichtenstein*, 83 F.4th at 602 (quoting *Dale*, 530 U.S. at 653). And third, does this burden on speech outweigh any governmental interests justifying the burden? *See id.*

Blick offers two theories to establish each of these elements. But neither theory has merit.

*Theory One*: Blick argues that the School District violated her right to associate with the "Lawton parents" who sought to rally to her support at the school-board meeting. Appellant's Br. 31. According to Blick, the School District burdened her right to associate with these parents by threatening that a reporter who would likely attend the board meeting would uncover and disclose the allegations of her affair with Johnson if the parents publicized her leave. *Id.* at 10, 22.

At the outset, it is not clear that these allegations meet the first element of our freedom-of-association test. She cites no case that has treated an informal and ad hoc group (parents who seek to attend a school-board meeting) as an "expressive association" entitled to First Amendment protection. *Dale*, 530 U.S. at 648. Most Supreme Court cases have instead involved formal entities like the Boy Scouts, the NAACP, or other charitable organizations. *See, e.g., id.* at 648–53; *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 611–15 (2021); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460–63 (1958). But we opt not to resolve her claim on this ground.

Even if Blick and the parents could seek freedom-of-association protection, she still must show that the School District's conduct "significantly burden[ed]" this informal group's ability to express their desired message supporting Blick. *Dale*, 530 U.S. at 653. The types of actions that can significantly burden a group's expression typically fall into two camps. In camp one, the government uses its coercive power to regulate the group. A State might, for example, compel a group to disclose the names of its members or force the group to accept members with whom it does not want to associate. *See NAACP*, 357 U.S. at 451–54; *Dale*, 530 U.S. at 645–47. In camp two, the government denies public benefits to the group. A State might, for example, prohibit the group's members from using its public buildings or deny them public jobs because of the group's expression. *See Healy v. James*, 408 U.S. 169, 181 (1972); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69 (1990). In short, "significant" burdens typically involve the government's use of its power or its purse to interfere with a group or its message.

When burdens have fallen short of these levels, courts have generally found them insignificant. Take our decision in *HCEA*. There, a teachers' union alleged that an assistant superintendent had interfered with its right to expressive association by sending a letter to the union. 822 F.3d at 834. The letter suggested that some of the union's solicitations of members could qualify as unlawfully intimidating. *Id.* The union responded that this claim interfered with its right to associate with prospective members. *Id.* Assuming that the union qualified as a protected association, we held that the mere act of sending this letter did not burden its right to expression association. *Id.* at 840–41 & n.3. The letter did not threaten punishment if the union continued with the challenged statements. *Id.* at 841. It simply suggested that the school board might counter with an official request for a retraction or with its own "protected expression" in response. *Id.*; *cf. Kesterson v. Kent State Univ.*, 967 F.3d 519, 526 (6th Cir. 2020) (per curiam).

Here, the burden that Blick identifies resembles the one we found insufficient in *HCEA* more than those that courts have accepted. Blick admitted that the School District did not "order" her or the supportive parents to stay silent and avoid the board meeting on threat of civil or criminal punishment. *Lyng v. UAW*, 485 U.S. 360, 366 (1988); Blick Dep., R.61-5, PageID 1327. Nor does she allege that the District threatened to fire her or deny her any other "significant" public benefits if she associated with the parents. *Royer ex rel. Est. of Royer v. City*

*of Oak Grove*, 374 F.3d 685, 688 (8th Cir. 2004); *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996). Rather, the School District allegedly threatened that a reporter might obtain Blick's file through a Freedom of Information Act (FOIA) request and publicly air the allegation that she was having an affair. And while Blick adamantly denies this affair (and we see nothing in the record to support the allegation), she does not claim that the School District lied about the *fact* that the allegation had been made. To the contrary, undisputed evidence shows that Johnson told his boss he was having an affair with Blick. So the threatened nondefamatory "*expression*"—from a third party in the media, no less—did not burden Blick's freedom of association. *HCEA*, 822 F.3d at 841 (emphasis added). Indeed, if we held that lawful counter-speech—let alone a response to a FOIA request—could significantly burden the freedom of expressive association, parties could counterintuitively use their First Amendment rights "as a weapon to silence" other speech they disliked. *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478–79 (2022).

*Theory Two*: Blick next alleges that the School District burdened her right to associate with her children by interfering with her relationship with them after it placed her on leave. She reraises many of the same harmful actions. Among other things, she alleges that the District "prevented" her from attending a choir concert in which her daughter sang, giving her son allergy medication on school grounds, and coaching her children's soccer team. Appellant's Br. 32.

This theory has an even more obvious problem: What do these allegations have to do with the First Amendment? Blick's lawyers confuse two types of freedom-of-association claims. Apart from the right to expressive association protected by the First Amendment, the Fourteenth Amendment's Due Process Clause protects certain "intimate human relationships" from excessive state interference. *Roberts*, 468 U.S. at 617–18; *see Flaskamp v. Dearborn Pub. Schs.*, 385 F.3d 935, 941–42 (6th Cir. 2004). To trigger heightened substantive-due-process scrutiny, however, a state action must impose a "direct and substantial" interference on family relationships. *See Flaskamp*, 385 F.3d at 942 (citation omitted). Blick's lawyers do not even identify this governing due-process test, let alone attempt to meet it.

Ultimately, though, we can avoid the merits of this claim.  Her counsel's briefing strategy has led her to forfeit it.  We have repeatedly rejected appellate challenges to a claim when a party attacks only one of the district court's two independent grounds for denying it.  *See, e.g.*, *Brebberman v. City of Maumee*, 2024 WL 1718029, at \*2 (6th Cir. Apr. 22, 2024); *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus.*, 29 F.4th 802, 815 (6th Cir. 2022); *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021).  In that scenario, the party has forfeited any challenge to the unbriefed ground.  And we can affirm a district court based on that ground alone.  *See Stewart*, 990 F.3d at 457.  This logic applies here.  The district court rejected Blick's intimate-association claim both because she did not plead the claim in her complaint and because it failed on the merits.  *Blick*, 674 F. Supp. 3d at 434–36.  But Blick's counsel briefed only the merits and ignored the district court's first pleading rationale.  She has thus forfeited any argument that she adequately alleged her intimate-association claim.  *See Stewart*, 990 F.3d at 457.

\*  \*  \*

We end with an argument that Blick makes for all of her First Amendment claims.  She sought to hold not just the individual officials liable on these claims.  She also sought to hold the School District (the entity) liable for its alleged "policy or custom" of violating its employees' First Amendment rights.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  We can make short work of this argument.  We have repeatedly held that a plaintiff cannot hold a city liable for an unconstitutional policy unless the policy led to a violation of the plaintiff's *own* rights.  *See Farris v. Oakland County*, 96 F.4th 956, 968–69 (6th Cir. 2024); *Dibrell*, 984 F.3d at 1165.  Because Blick failed to show that any school officials violated her First Amendment rights, her *Monell* claim against the District necessarily fails too.  *See Farris*, 96 F.4th at 968–69.

### III. Claims Rejected on the Pleadings

This conclusion leaves Blick's three causes of action that the district court dismissed without discovery.  The court held that her complaint did not plausibly allege race-discrimination, due-process, and civil-conspiracy claims.  Blick renews all three on appeal.

A. Discrimination Claim

Blick's complaint raised a race-discrimination claim under two federal provisions (Title VII and the Equal Protection Clause) and one state provision (the Elliott-Larsen Civil Rights Act). We recently suggested that the Equal Protection Clause and Title VII have different texts that may create different legal rules. *See L. W. v. Skrmetti*, 83 F.4th 460, 484–85 (6th Cir. 2023). And the text of the Elliott-Larsen Civil Rights Act likewise differs from both the Equal Protection Clause and Title VII. That said, the parties agree that the three provisions on which Blick relies have the same reach in this case. *Cf. Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014); *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 917–18 (6th Cir. 2014). Their agreement allows us to assume this point. We thus will limit our discussion to Blick's Title VII claim.

As relevant here, Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). We have long read the words "terms, conditions, or privileges of employment" to cover only *materially* "adverse employment actions." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc) (internal quotation omitted), *aff'd*, 548 U.S. 53 (2006); *see Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021). Like most courts, we have also long held that an employer does not take a materially adverse action when it temporarily suspends an employee with *full pay* while "timely" investigating the employee's potential misconduct. *White*, 364 F.3d at 803; *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004); *see Sensabaugh v. Halliburton*, 937 F.3d 621, 628–29 (6th Cir. 2019); *Jackson*, 194 F.3d at 752; *see also Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266–67 (11th Cir. 2021) (per curiam) (citing cases). So the district court dismissed Blick's claim because the School District continued to pay her on leave. *See Blick*, 516 F. Supp. 3d at 721–24.

A recent Supreme Court decision calls this rationale (and our precedent) into doubt. *See Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974–77 (2024). In *Muldrow*, the Court interpreted Title VII's relevant text (to "discriminate against" an employee in the "terms" or "conditions" of

employment) as requiring an employee to prove only that a challenged action caused the employee "some harm respecting an identifiable term or condition of employment." *Id.* at 974. The Court added that an action can violate Title VII even if it does not cause a "*significant*" injury to the employee. *Id.* (emphasis added). Applying this test, the Court held that an alleged racially discriminatory transfer qualified as a "'disadvantageous' change in an employment term or condition." *Id.* (citation omitted). Likewise, one might reasonably argue that a temporary suspension (even with pay) causes "some harm" and also concerns a "term or condition" of the job—all that *Muldrow* now requires under Title VII. *Id.*; *see also Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024).

But we need not consider whether *Muldrow* has any bearing on this case. On appeal, Blick did not alert us to this decision or challenge our existing precedent that paid leave does not qualify as an adverse action. Rather, she found our precedent "distinguishable" because she alleged that the School District took harmful actions against her *other* than its decision to place her on paid leave. Appellant's Br. 44. But she did not sufficiently develop any of the theories that she raises (and that are distinct from paid leave) to preserve this claim. *See A.K.*, 969 F.3d at 631.

Consider three examples. First, Blick alleged in her complaint that the District took adverse actions against her by barring her from attending some of her children's school activities and by filing a police report that implicated her in Johnson's fraud. Yet how do these actions concern the "terms" or "conditions" of her employment as a principal? Even though the district court raised this question, Blick did nothing on appeal to answer it. *Blick*, 516 F. Supp. 3d at 723.

Second, Blick alleged in her complaint that the School District made "false and stigmatizing representations" about her when announcing her leave—namely, that she asked parents and staff to "respect her privacy." Appellant's Br. 41; Am. Compl., R.14, PageID 102. Yet how did this bland statement (even if false) cause her "harm" under our precedent or under the Supreme Court's more lenient test adopted in *Muldrow*, 144 S. Ct. at 974? Blick's counsel again does not say. *Cf. Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016).

Third, Blick renews her challenges to events that postdate the operative complaint that she filed in October 2019. Among other things, she notes that the District refused to "renew" her contract in 2021. Appellant's Br. 43. Yet we cannot consider these post-complaint allegations because Blick failed to file a supplemental pleading. *See El-Khali*, 2021 WL 4621828, at *4.

All told, Blick did not preserve any challenge to our paid-leave precedent because she sought to distinguish this precedent from her case. But she did not adequately develop any theory independent of her paid leave. *See A.K.*, 969 F.3d at 631. So she has forfeited these other theories. We thus can save *Muldrow*'s effect on our caselaw for another day.

## B. Due-Process Claim

Blick next challenges the dismissal of her claim that the School District violated due process by failing to give her a hearing before placing her on leave. The Due Process Clause bars States from depriving people of "liberty" or "property" "without due process of law[.]" U.S. Const. amend. XIV, § 1. The district court held that Blick's suspension did not deprive her of any property interest—and thus did not require any pre-leave process—because the School District *paid* her during the leave. *Blick*, 516 F. Supp. 3d at 729. The court added that Blick could not demand a hearing based on any liberty interest in maintaining her good reputation. *Id.* at 730. That alleged reputational harm alone did not give Blick a right to a hearing unless the District also deprived her of "more tangible interests[.]" *Id.* (citation omitted). And the court found that the mandate to take paid leave did not deprive her of any such interest. *Id.*

After the court issued its decision, though, we opined that a public employer's decision to pay an employee during a suspension does not create an automatic "safe harbor" from all due-process scrutiny. *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 581 n.3 (6th Cir. 2021). That said, Blick still must show that the suspension deprived her of a state-created property interest. *Cf. id.* at 579–80. In that respect, Michigan law suggests that teachers assigned to administrative roles (such as the role of principal) lack state-created tenure rights in those roles. *See* Mich. Comp. Laws § 38.91(7); *see also Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 226–27 (6th Cir. 1976). And Blick's opening brief did not attempt to identify any other "property" interest that she lost during her the leave.

But we need not enter this debate because Blick's counsel forfeited this claim too. As we have explained, litigants forfeit a claim if they challenge only one of two independent reasons why a district court rejected it. *See Brebberman*, 2024 WL 1718029, at *2; *Stewart*, 990 F.3d at 457. That rule covers this claim too—with a nuance. Unlike in these other cases, the district court's decision to reject Blick's due-process claim rested on a central proposition: paid leave raises no due-process problem. So Blick's counsel should have known the basis for its decision. Yet counsel ignored this reason in Blick's opening brief. They instead adopted—sometimes word for word—the brief they filed in the district court in response to the motion to dismiss. That brief said nothing about the district court's holding that paying an employee during a suspension satisfies due process. And while counsel belatedly mentioned this issue in Blick's reply brief, that effort came far "too late." *Stewart*, 990 F.3d at 457. Because Blick did not timely dispute the district court's categorical rule, we reject her due-process claim on forfeiture grounds alone. *See id.*

## C. Conspiracy Claim

Blick concludes with a page-and-a-half attempt to overturn the dismissal of her conspiracy claim under § 1983. To prove such a conspiracy, a plaintiff must establish three things. *See Rudd v. City of Norton Shores*, 977 F.3d 503, 517 (6th Cir. 2020); *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). First, at least two people must have agreed to a "single plan" to deprive the plaintiff of rights protected by § 1983. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citation omitted). Second, each alleged coconspirator must have subjectively "shared" the plan's illegal objective. *Id.* (citation omitted). And third, one of the coconspirators must have taken an "overt act" to carry out the plan. *Id.* (citation omitted).

To get past the pleading stage on a conspiracy claim, a complaint must assert "specific allegations" that plausibly suggest each of these elements. *Rudd*, 977 F.3d at 511–12, 517; *see Siefert v. Hamilton County*, 951 F.3d 753, 768 (6th Cir. 2020). Conversely, a plaintiff cannot obtain discovery with "vague and conclusory allegations" of a conspiracy's existence or a defendant's participation in it. *Rudd*, 977 F.3d at 517 (citation omitted); *Bickerstaff v. Lucarelli*, 830 F.3d 388, 401 (6th Cir. 2016); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (citation omitted).

Here, it is not clear that Blick could allege a plan between two or more people as a matter of law. *See Robertson*, 753 F.3d at 622. Under the so-called "intracorporate conspiracy doctrine," individuals acting in their capacities as employees of the same entity (such as a city) cannot conspire with each other. *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). So a plaintiff must show an agreement between these employees and another person. *See Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019). Yet the individual defendants in this case all worked for the School District. *See Baar*, 311 F. App'x at 826–27.

But the School District did little to develop this argument. And we need not decide Blick's claim on the intracorporate-conspiracy doctrine because her complaint falls short of pleading a conspiracy claim's second element. When we have held that a complaint plausibly alleged that a defendant agreed to a "conspiracy's objectives," we have highlighted the specific allegations connecting that defendant to those objectives. *Rudd*, 977 F.3d at 518–19; *see Novak*, 932 F.3d at 436–37. Blick's complaint, by contrast, generically alleged that the undifferentiated group of "Defendants" *collectively* conspired to deprive her of rights. Am. Compl., R.14, PageID 134. The district court correctly explained that the complaint did not even identify the specific defendants who joined this conspiracy—let alone make specific allegations plausibly connecting them to its objectives. *Blick*, 516 F. Supp. 3d at 732. And after the district court identified this problem, Blick's appellate briefing doubled down on the same approach. She continues to treat the defendants as a collective. Her briefing suggests that the "Appellees" conspired without identifying any of the complaint's allegations plausibly showing that any specific defendant shared the conspiracy's objectives. Appellant's Br. 50. So she has not pleaded this claim with the "degree of specificity" we require. *Siefert*, 951 F.3d at 768 (citation omitted); *Bickerstaff*, 830 F.3d at 401.

We affirm.