NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0093n.06

No. 25-1234

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>
ALISON REEDY, as Next Friend to D.R., a minor;<br>
D.R., a minor, by Next Friend Alison Reedy,<br><br>
    Plaintiffs-Appellants,<br><br>
v.<br><br>
HURON SCHOOL DISTRICT; DONAVON ROWE; HURON TOWNSHIP POLICE DEPARTMENT; EVERETT ROBBINS; LEO GIRARD; ANDREW TOMASEK; RONNIE SEVERIN,<br><br>
    Defendants-Appellees.
</td>
<td>
) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )
</td>
<td>
ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN<br><br>
OPINION
</td>
</tr>
</table>

Before: GILMAN, GRIFFIN, and MURPHY, Circuit Judges.

GRIFFIN, Circuit Judge.

Eight days after the school shooting in Oxford, Michigan, and less than 70 miles away, plaintiff D.R. made a comment to a classmate, which included the phrase, "shut up or else I'm going to shoot up the school like Oxford." A teacher overheard, school administrators responded, and police officers investigated. D.R. was ultimately expelled and charged with threatening to commit an act of violence in school. D.R. and his mother, plaintiff Alison Reedy, then filed this action, alleging several constitutional claims and some state-law claims. But the district court granted defendants' motions for judgment on the pleadings and dismissed the action with prejudice. We affirm.

FILED
Feb 20, 2026
KELLY L. STEPHENS, Clerk

I.

A.

On November 30, 2021, a student took a gun to school in Oxford, Michigan and shot one teacher and ten students, killing four. Eight days later, and less than 70 miles away, D.R. made a statement to a classmate at Huron High School. The teacher of that class, Ronnie Severin, heard D.R. say, "shut up or else I'm going to shoot up the school like Oxford." Severin immediately took D.R. into the hallway and then reported the incident to the principal, Megan O'Brien.

Shortly after, Principal O'Brien and the school liaison officer, Keith Nappo, collected D.R. from the classroom and brought him to the front office. Once Assistant Principal Andrew Tomasek arrived, Principal O'Brien and Officer Nappo left to interview student witnesses.

Assistant Principal Tomasek asked D.R. what happened, and D.R. told him that he and a classmate were having a conversation, the classmate said, "don't be like the kid from Oxford," and D.R. responding by saying, "shut up, I'm not" and then "shut up or else I'm going to shoot up the school like Oxford." D.R. repeated the same conversation when asked again by Assistant Principal Tomasek.

Principal O'Brien and Officer Nappo returned, and Reedy, D.R.'s mother, joined them. When Reedy asked D.R. what he had said, he twice repeated "shut up or else I'm going to shoot up the school like Oxford." D.R. then left with Assistant Principal Tomasek to prepare a written statement. D.R. wrote that he was talking with a classmate "and it progressed to the point where [the classmate] said 'don't be that kid that shot up Oxford' and then I said 'I'm not going to be like shut up or else I'm going to shoot up the school like Oxford.'"

Officer Nappo met separately with D.R. and Reedy. Officer Nappo remembered D.R. first saying "he didn't say what he said," but then saying he made "the comments that [Severin] was

reporting." D.R. provided a second written statement, which was essentially the same as the one he wrote for Assistant Principal Tomasek: After his classmate said, "don't be like that kid from Oxford," D.R. said, "I'm not going to be like. Shut up or else I'm going to shoot up the school like Oxford." The classmate to whom D.R. made the comment also provided a written statement, which stated that D.R. said he was "not going to [] turn this [place] into Oxford."

Officer Nappo informed his supervisor, Lieutenant Leo Girard, about the situation. Lieutenant Girard reviewed the information, including D.R.'s second written statement. D.R. was then arrested and taken to the Wayne County Juvenile Intake. Afterward, the Wayne County Prosecutor's Office filed a delinquency petition, charging D.R. with making an intentional threat to commit an act of violence against a school, school employees, or students, in violation of Mich. Comp. Laws § 750.235b(1).

D.R. was told the Board of Education would determine after a hearing whether he should be expelled. D.R. had legal counsel to defend himself, but he was not allowed to call a witness. Following the hearing, the Board expelled D.R. for the rest of the academic year.

A bench trial was held regarding the delinquency petition. D.R. surmised that Severin heard only the last part of his comment—"[s]hut up or else I'm going to shoot up the school"— and missed the first part, him "trying to say what [he] wasn't going to do." The juvenile court concluded that D.R.'s statement was not threatening because he had said, "I'm not going to be like the person who says shut up or I'm going to shoot up the school." Although the juvenile court acknowledged that Severin had to report the statement, the school had to act on it, and the prosecutor's office understandably thought the case was appropriate to pursue, it determined that nothing D.R. said "should have been perceived as a threat." Accordingly, the juvenile court denied the delinquency petition.

B.

Plaintiffs then filed suit in district court. The operative complaint alleged seven causes of action: a claim under Mich. Comp. Laws § 380.1310d, which provides the mandatory factors to be considered before a student's suspension or expulsion; due-process, false-arrest, malicious-prosecution, and freedom-of-speech claims under 42 U.S.C. § 1983; a malicious-prosecution claim under state law; and a state-law, intentional-infliction-of-emotional-distress (IIED) claim. Defendants—the Huron School District, Superintendent Donavon Rowe, Assistant Principal Tomasek, and Severin (collectively, the School Defendants); and the Huron Township Police Department, Chief Everett Robbins, and Lieutenant Girard (collectively, the Police Defendants)—moved for judgment on the pleadings.

Plaintiffs failed to timely respond to defendants' motions, which led the district court to warn "that any future failure to abide by the Court's deadlines shall result in sanctions up to and including dismissal of this case with prejudice."[1] Yet plaintiffs still failed to timely respond. And, when finally responding, plaintiffs briefed only some of their claims.

The district court granted defendants' motions for judgment on the pleadings. The district court also dismissed the action with prejudice based on plaintiffs' failure to timely respond to the motions. Plaintiffs timely appealed.

II.

We review a district court's decision regarding a motion for judgment on the pleadings under the same de novo standard of review as for a motion to dismiss. *Tucker v. Middleburg-*

---

[1] This was not the district court's only admonition. Early on, it issued a show-cause order because plaintiffs had not properly served defendants almost four months after filing suit. Several months later, plaintiffs had still not timely served certain defendants. The district court excused these shortcomings, however.

*Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). To survive a motion for judgment on the pleadings, the plaintiff must put forward sufficient factual matter for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 692 (6th Cir. 2022) (citation modified). All well-pleaded material allegations in the complaint are taken as true, and the court may consider, among other things, documents attached to the pleadings. *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1030 (6th Cir. 2025). Conclusory or threadbare allegations will not do. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

## III.

As a preliminary matter, we note that plaintiffs' brief spends a mere eight pages to argue the issues it purports to raise, with some being addressed in a single paragraph.[2] But our caselaw "makes clear that it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *United States v. Persaud*, 866 F.3d 371, 385 (6th Cir. 2017) (citation modified).

Further, plaintiffs' brief is a carbon copy of their responses to defendants' motions for judgment on the pleadings. And by "merely regurgitat[ing]" arguments made before the district court had decided the motions, plaintiffs "ignore[] several grounds on which the district court relied to dismiss [their] claims" and therefore fail to preserve challenges to those grounds. *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 873 (6th Cir. 2024).

---

[2] We note that plaintiffs do not challenge the district court's dismissal of their § 380.1310d claim, their malicious-prosecution claims, or their official-capacity claims; nor do they challenge the district court's dismissal of the action with prejudice.

Here, we will consider only the issues that plaintiffs actually raise on appeal: whether the district court erred in dismissing the § 1983 due-process and freedom-of-speech claims against the School Defendants, the § 1983 false-arrest claim and the IIED claim against the Police Defendants, and any viable claim against either under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[3] We will also consider them only as plaintiffs have presented them to the court— threadbare and in regurgitated form. *See Clark v. Sweeney*, 146 S. Ct. 410, 412 (2025) (per curiam); *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020).

IV.

"To succeed on a § 1983 claim, [plaintiffs] must first identify a constitutional right, then show that a person acting under the color of state law deprived him of that right." *Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 870 (6th Cir. 2024). To overcome § 1983's qualified-immunity defense, plaintiffs must also plausibly plead "that all reasonable people would have recognized that their conduct violated the law." *Blick*, 105 F.4th at 876.

A.

"Public-school students facing expulsion or suspension are entitled to due-process protection." *Halasz v. Cass City Pub. Schs.*, 162 F.4th 724, 735 (6th Cir. 2025) (citing *Goss v. Lopez*, 419 U.S. 565, 581 (1975), and *Newsome v. Batavia Loc. Sch. Dist.*, 842 F.2d 920, 927 (6th Cir. 1988)). Adequate process, at a minimum, includes "oral or written notice of the charges against [the student]," "an explanation of the evidence the authorities" had, and "an opportunity to present his side of the story." *Goss*, 419 U.S. at 581; *see also Newsome*, 842 F.2d at 927 (establishing that *Goss* sets the minimum requirements for school expulsions).

---

[3] At oral argument, plaintiffs' counsel asserted that they were also appealing a gross-negligence claim; however, they did not plead such a claim in the operative complaint (or, for that matter, in the initial complaint).

At oral argument, plaintiffs' counsel stated that their appeal rises or falls depending on whether they plausibly demonstrated that the School Defendants provided inadequate process before expelling D.R. Plaintiffs first suggest—in a single conclusory sentence—that the School Defendants failed to conduct "a full investigation" or provide "proper notice." They fail to provide any factual content to back up this claim, however, so it is unavailing. Moreover, there was undoubtedly a lengthy investigation the day of the incident; D.R. attended the hearing, so plaintiffs were aware of it; and, at that hearing, D.R. was able to present his side of the story. This met the minimum "notice and hearing requirements" under *Goss*. *See* 419 U.S. at 581.

Plaintiffs also aver that a student facing expulsion has a right to call witnesses on his behalf, which D.R. allegedly was not allowed to do at the hearing.[4] But plaintiffs failed to provide any meaningful argument regarding this question, so we decline to address it.

In sum, plaintiffs have failed to show that the School Defendants provided D.R. inadequate process. Thus, the individual defendants are entitled to qualified immunity on this claim. *Halasz*, 162 F.4th at 737. And without an underlying constitutional violation, plaintiffs cannot plausibly plead a *Monell* claim either. *See Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023).

B.

"[S]chools can generally forbid or punish student speech that causes a 'substantial disruption of or material interference with school activities.'" *B.A. v. Tri Cnty. Area Schs.*, 156 F.4th 782, 789 (6th Cir. 2025) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 514 (1969)); *see also Barr v. Lafon*, 538 F.3d 554, 565 (6th Cir. 2008) (clarifying that an actual disruption need not have occurred). When analyzing the actions of school officials,

---

[4] At oral argument, plaintiffs' counsel also claimed that no witnesses were interviewed following the incident. But the record shows that this is patently false.

recent events occurring nearby may be important to consider. *C.S. v. McCrumb*, 135 F.4th 1056, 1063 (6th Cir. 2025). And we "provide educators a high degree of deference in the exercise of their professional judgment." *Kutchinski ex rel. H.K. v. Freeland Cmty. Sch. Dist.*, 69 F.4th 350, 360 (6th Cir. 2023).

At oral argument, plaintiffs' counsel conceded that this is not a very strong claim. We agree based on counsel's conclusory briefing. First, Huron High School is less than 70 miles away from Oxford, and D.R.'s statement was made just eight days after the shooting there, which left four people dead and seven injured. Further, plaintiffs' counsel conceded at oral argument that we should consider D.R.'s statement from the perspective of the School Defendants, who perceived the phrase—"I'm going to shoot up the school like Oxford"—as a threat.

And it is certainly reasonable to believe that a threat to shoot up the school caused or was likely to cause a substantial disruption of, or material interference with, school activities. *See Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 158 F.4th 732, 749–50 (6th Cir. 2025) (en banc). Thus, the School Defendants' actions did not violate the First Amendment.

In sum, the individual School Defendants are entitled to qualified immunity on this claim. And plaintiffs therefore cannot plausibly plead a *Monell* claim. *See Chambers*, 63 F.4th at 1101–02.

## C.

"A showing of probable cause provides a complete defense to a claim of false arrest." *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) (citation modified). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (citation

modified). This is not a high bar; probable cause requires only "a reasonable ground for belief of guilt." *United States v. Baker*, 976 F.3d 636, 645 (6th Cir. 2020) (citation modified).

Plaintiffs argue that the arresting officers lacked probable cause to arrest D.R. We disagree. D.R. was charged with violating Mich. Comp. Laws § 750.235b(1). The statute provides that a person commits this offense when he "verbally . . . or through other means intentionally threatens to use a firearm . . . to commit an act of violence against any students or school employees on school grounds or school property" and "the threat can be reasonably interpreted to be harmful [or dangerous] or adverse to human life." Mich. Comp. Laws § 750.235b(1). Before D.R. was arrested, Lieutenant Girard reviewed the information collected by Officer Nappo, which included D.R.'s statement and the phrase, "shut up or else I'm going to shoot up the school like Oxford." Based on this phrase, the arresting officers had reasonable grounds to believe that D.R. was guilty of threatening to use a firearm to commit a harmful or dangerous act of violence at school. They therefore had probable cause to arrest D.R. The fact that the juvenile court ultimately determined that D.R. had not violated § 750.235b(1) does not alter this conclusion. *See Henry v. United States*, 361 U.S. 98, 102 (1959) ("If the officer acts with probable cause, he is protected even [if] it turns out that the citizen is innocent.").

Accordingly, this claim was properly dismissed as to the individual Police Defendants. *See Tlapanco*, 969 F.3d at 652. And, again, with no constitutional violation plausibly pleaded, plaintiffs also cannot make out a plausible *Monell* claim. *See Chambers*, 63 F.4th at 1101–02.

V.

Lastly, plaintiffs' IIED claim requires a showing of "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Atkinson v. Farley*, 431 N.W.2d 95, 97 (Mich. Ct. App. 1988) (citing *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d

905, 908 (Mich. 1985)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Roberts*, 374 N.W.2d at 908–09).

Although the operative complaint does not indicate against which defendant(s) plaintiffs' IIED claim is aimed, their brief seems to suggest that the Police Defendants intentionally inflicted emotional distress on D.R. But plaintiffs fail to put forward facts to demonstrate intent or recklessness by any defendant, or any conduct that went beyond all possible bounds of decency. Thus, this claim is implausible as to any defendant.[5]

VI.

For the foregoing reasons, we affirm the district court's order granting defendants' motions for judgment on the pleadings and its dismissal of the action with prejudice.

---

[5] Accordingly, we do not reach the question regarding whether the claim was also properly dismissed on the grounds of governmental immunity.